# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONARD FARLEY,<br><br>            Plaintiff,<br><br>    v.<br><br>DR. HAROLD TATE,<br><br>            Defendant.<br>_____/ | CASE NO.    1:06-cv-1760-LJO-MJS (PC)<br><br>ORDER DENYING PLAINTIFF'S MOTION TO COMPEL<br><br>(ECF Nos. 65) |

Plaintiff Leonard Farley ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

## I.  INTRODUCTION; PROCEDURAL HISTORY

Plaintiff's Amended Complaint has been screened and found to state a cognizable claim against Defendants Capot and Tate. (Order, ECF No. 17.) Defendants filed a Motion to Dismiss (ECF No. 22); it was granted on March 25, 2009 (ECF No. 33). On appeal, the Ninth Circuit found that the claim against Defendant Capot had been properly dismissed, but that the district court had erred in dismissing the claim against Defendant Tate. (Mem., ECF No. 39.) Accordingly, the case proceeded against Defendant Tate, and he filed his Answer on August 25, 2010. (Answer, ECF No. 48.) The parties then undertook discovery.

Before the Court is Plaintiff's January 25, 2011 Motion to compel Defendant Tate's further responses to Plaintiff's request for production of documents, interrogatories and requests for admission. (Mot., ECF No. 65.) Defendant Tate filed an Opposition on February 14, 2011. (Opp'n, ECF No. 66.)

## II. PLAINTIFF'S REQUESTS

Plaintiff seeks to compel Defendant Tate's additional response to all of Plaintiff's discovery requests. Plaintiff's various requests are listed, by category of discovery device, below:

### A. Plaintiff's Requests for Production of Documents

1. Any and all grievances, complaints, or other documents received by the Defendants or their agents at Tehachapi State Prison concerning mistreatment, inadequate medical care, denial of treatment of inmates by Defendant Dr. Harold Tate, and any memoranda, investigative files, or other documents created in response to such documents, since January 1, 2005.

2. Any and all policies, directives, or instructions to staff governing sick call procedures, both in general population and in segregation.

3. The Plaintiff's complete medical records from September 5, 2004 to the date of [Defendant Tate's] response.

4. Any logs, lists, or other documentation reflecting grievances filed by Tehachapi State Prison inmates about receiving inadequate medical care, or denial of treatment from Dr. Harold Tate, from January 1, 2004 to the Date of [Defendant Tate's] response.

5. Any and all documents created by any Tehachapi State Prison staff member in response to a grievance filed by the Plaintiff in January, 2005 concerning his medical care.

6. Any and all documents created by any Tehachapi State Prison staff member from September 5, 2004 to date, concerning the Plaintiff's medical care and not included in items 4,5,6, of [Plaintiff's Request for Production of Documents].

### B. Plaintiff's Interrogatories Combined with Requests for Production of Documents

1. State the duties of Defendant Dr. Harold Tate, Chief Medical Officer at Tehachapi State Prison. If those duties are set forth in any job description or other document, produce the document

2. State the duties of Defendant Dr. Harold Tate, Chief Medical Officer at Tehachapi State Prison, insofar as they pertain to providing medical care to prisoners or transportation of prisoners to medical appointments or facilities. If those duties are set forth in any job description or other document, product the document.

3. State the names, titles, and duties of all staff members at Tehachapi State Prison, other than Defendant Tate, who have responsibility for scheduling prisoners' medical appointments outside the prison, or for evaluating requests for specialized treatment or evaluation. If those duties are set forth in any job description, or other document, produce the document.

4. State the names, titles, and duties of all staff members at Tehachapi State Prison, other than Defendant, who have responsibility for ensuring that inmates requests for medical attention are responded to. If those duties are set forth in any job description, or other document, produce the document.

5. State the procedure in effect during September, 2004 at Tehachapi State Prison for conducting sick call, including the procedure by which inmates sign up for or request sick call. If the procedure is different for segregation inmates than for general population inmates, state both procedures. If those procedures are set forth in any policy, directive, or other document, produce the document.

6. State the names, titles, and duties of all staff members at Tehachapi State Prison who have responsibility for responding to, investigating or deciding inmate grievances. If those duties are set forth in any job description, policy, directive, or other document, produce the document.

7. State the procedure in effect during September, 2004 at Tehachapi State

Prison for responding to, investigating and deciding inmate grievances. If the procedure for handling grievances based on medical complaints is different from the procedure for handling other kinds of grievances, state both procedures. If those procedures are set forth in any directive, manual or other document, produce the document.

**C.    Plaintiff's Requests for Admission**

1.  The Plaintiff was transported to the emergency room of Mercy Hospital in Bakersfield California, on April 12, 2005.

2.  The Plaintiff was examined at Mercy Hospital by physician Dr. Ronald Rodriguez.

3.  Dr. R. Rodriguez concluded that the Plaintiff was suffering from a cancerous tumor.

4.  Dr. Rodriguez, removed cancerous tumor on April 13, 2005.

5.  It is the routine and established practice at Tehachapi Prison to send a "Tehachapi Prison Hospital Referral Form" along with every inmate who is taken to a hospital.

6.  It is the routine and established practice at Mercy Hospital to write on the referral form the patient's diagnosis, the treatment provided at the hospital, and directions for follow-up treatment after the patient's return to the prison.

7.  It is the routine and established practice at Tehachapi Prison for the Chief Medical Officer to review all referral forms to ensure that the patient receives appropriate follow up treatment.

8.  Dr. Rodriguez's directions regarding Plaintiff's continued treatment of cancer situation, and provision of physical therapy were placed in writing on a referral form.

9.  The referral form containing Dr. Rodriguez's directions was returned to the prison along with the Plaintiff consistently with the prison's routine and established practice.

10. Dr. Tate, reviewed the referral from bearing Dr. Rodriguez's directions consistently with the prison's routine and established practice.

11. As of this date, the Plaintiff has not been provided with physical therapy needed to heal correctly from surgery on April 13, 2005.

12. There is an informal policy at Tehachapi Prison giving low priority to the medical needs of the inmates housed there.

13. The failure to remove the Plaintiff's cancerous tumor in a timely manner resulted from the application of the informal policy stated in item 12 of this request.

14. Defendant Tate knew of this policy and acquiesced in it's [sic] application to the Plaintiff.

15. Defendant Tate took no action to ensure that the Plaintiff [sic] tumor was removed in a timely manner.

16. There is an informal policy at Tehachapi Prison that inmates are not sent out of the prison for medical care unless their lives are at risk.

17. The failure to provide needed surgery to the Plaintiff resulted from the application of the informal policy stated in item 14 of this request.

18. Defendant Tate knew of this policy and acquiesced in it's [sic] application to the Plaintiff.

19. Defendant Tate took no action to ensure that Plaintiff receive the proper medical care after surgery on April 13, 2005.

20. Defendant Tate took no action to ensure that Plaintiff be placed in proper housing so he could receive proper treatment after surgery on April 13, 2005.

21. The failure to provide physical therapy, proper housing for the Plaintiff presents a substantial risk to Plaintiff [sic] health and safety.

### III. PLAINTIFF'S ARGUMENT

Plaintiff served his discovery requests on September 14, 2010. Defendant Tate did not respond in the time allotted under applicable rules. After Plaintiff wrote and advised

him that responses were past due, Defendant requested that his deadline to respond be extended to December 15, 2010. At some point prior to December 20, 2010, Plaintiff received Defendant Tate's responses. On December 20, 2010, Plaintiff wrote and advised that the responses were incomplete and requested additional information. Plaintiff advised that he would file a Motion to Compel if he did not hear from Defendant Tate within 20 days.

Plaintiff now argues that Defendant Tate waived his objections by his failure to timely respond to the discovery requests. Plaintiff also argues that the information sought in each of his discovery requests is relevant to the claims and defenses in his case. However, Plaintiff only explains the relevancy of the information sought in one of his multiple discovery requests even though he is seeking to compel further answers to all of his requests. Except as to that one, Plaintiff does not explain why Defendant Tate's responses were deficient, why Defendant Tate's objections were not justified, and why the information he sought is relevant to the prosecution of this action.

## IV. **DEFENDANT'S OPPOSITION**

Defendant first argues that Plaintiff failed to identify which of Defendant Tate's responses to Plaintiff's requests for production of documents were inadequate. Defendant correctly notes that Plaintiff has the burden of informing the Court "which discovery requests are the subject of his motion to compel, which of [Defendant's] responses are disputed, why he believes [Defendant's] responses are deficient, why [Defendant's] objections are not justified, and why the information he seeks through discovery is relevant to the prosecution of this action." Haynes v. Sisto, No. CIV S-08-2177, 2010 WL 4483486, at *1 (E.D. Cal. Nov. 1, 2010).

Defendant Tate also argues that he has produced all responsive documents in his possession, custody, or control. (Opp'n at 2.) He either: 1) produced all of the responsive documents, 2) notified Plaintiff that he did not have any responsive documents, or 3) informed Plaintiff that Plaintiff could inspect Defendant's central and medical files. (Opp'n at 3.)

### III. ANALYSIS

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). For document production requests, responding parties must produce documents which are in their "possession, custody or control." Fed. R. Civ. P. 34(a)(1). "Property is deemed within a party's 'possession, custody, or control' if the party has actual possession, custody, or control thereof or the legal right to obtain the property on demand." Allen v. Woodford, No. CV–F–05–1104, 2007 WL 309945, at *2 (E.D.Cal. Jan.30, 2007) (citing In re Bankers Trust Co., 61 F.3d 465, 469 (6th Cir. 1995)); accord Bovarie v. Schwarzenegger, No. 08cv1661, 2011 WL 719206, at *4 (S.D.Cal. Feb. 22, 2011); Evans v. Tilton, No. 1:07CV01814, 2010 WL 1136216, at *1 (E.D.Cal. Mar.19, 2010).

Once Defendant Tate objects to a discovery request, it is Plaintiff's burden to assert in his Motion to Compel why the objection is not justified. In general, Plaintiff must inform the Court which discovery requests are the subject of his motion to compel, and, for each disputed response, inform the Court why the information sought is relevant and why Defendant's objections are not meritorious.

Plaintiff explains why Defendant's objections are not meritorious and the documents sought are relevant only with regard to the first one of his requests for documents. Plaintiff argues that the requested items are relevant to show Defendant Tate's "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." (Mot. at 32.) However, nothing presented to the Court suggest that any such matters are relevant to claims raised in Plaintiff's First Amended Complaint. (Am. Compl., ECF No. 15.) Plaintiff also neglected to inform the Court that Defendant Tate had granted Plaintiff permission to inspect and copy his "central and medical Files" pursuant to institutional policies. (Mot. at Ex. E.) Plaintiff does not indicate if he availed himself of this opportunity. Plaintiff fails to offer any evidence that Defendant had possession, custody,

or control over documents which were requested and not made available for inspection and copying. Plaintiff's Motion to Compel further production of documents shall accordingly be denied.

  Plaintiff has failed to inform the Court why he believes Defendant's other responses are deficient and why the information he seeks is relevant to the prosecution of his action.

  Plaintiff's argument that Defendant Tate's tardiness in responding to Plaintiff's discovery requests resulted in Defendant waiving his objections to Plaintiff's discovery requests is also without merit. Plaintiff did not object when Defendant's attorney asked for additional time to respond to Plaintiff's discovery requests. (Mot. at Ex. C.) It appears that Plaintiff effectively acquiesced to Defendant's delay; in Plaintiff's affidavit attached to his current Motion he refers to a "deal" he entered into with Defendant's counsel to extend the response deadline. (Id. at 14.)

### III.  CONCLUSION

In accordance with the above, Plaintiff's January 25, 2011, Motion to Compel (ECF No. 65) is hereby DENIED.

IT IS SO ORDERED.

Dated: September 13, 2011  /s/ *Michael J. Seng*
               UNITED STATES MAGISTRATE JUDGE