# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONARD FARLEY, | CASE NO. 1:06-cv-1760-LJO-MJS (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATION THAT MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| v. | |
| DOCTOR E. CAPOT, et al., | (ECF No. 72) |
| Defendant. | OBJECTIONS DUE WITHIN THIRTY DAYS |

Plaintiff Leonard Farley ("Plaintiff") is a former state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Plaintiff's Amended Complaint was screened and found to state a cognizable claim against Defendants Capot and Tate. (Order, ECF No. 17.) Defendants filed a Motion to Dismiss (ECF No. 22), that was granted on March 25, 2009 (ECF No. 33). On appeal, the Ninth Circuit found that the claim against Defendant Capot was properly dismissed, but that the district court erred in dismissing the claim against Defendant Tate. (Mem., ECF No. 39.)

Before the Court is Defendant Tate's Motion for Summary Judgment. (ECF No. 72.) Plaintiff has filed an Opposition to the Motion, and Defendant Tate has filed a Reply. (ECF Nos. 77 & 79.) The Motion for Summary Judgment is now ready for ruling.

## I. FACTS

The facts, viewed in the light most favorable to Plaintiff, are as follows:

At all times relevant to this action, Plaintiff was in the custody of the California Department of Corrections and Rehabilitation ("CDCR") at the California Correctional

Institution ("CCI") in Tehachapi, California. Also at all times relevant to this action, Defendant Tate was employed by CDCR as the Chief Medical Officer ("CMO") at CCI.

On September 5, 2004, Plaintiff met with Doctor Capot,[1] and complained of abdominal pain. The pain was sharp and stabbing and prevented Plaintiff from sitting, standing, bending, eating, and using the restroom. Doctor Capot found nothing wrong with Plaintiff. On October 5, 2004, Plaintiff saw Doctor Capot again. Rather than prescribe medication or surgery, Doctor Capot ordered an ultrasound. He did not order any additional treatment.

Plaintiff made several other attempts to obtain treatment for his abdominal pain by CCI's medical staff.

On January 21, 2005, Plaintiff was seen by a Doctor Hirsh who found an abnormal growth on the left side of Plaintiff's stomach and ordered a CAT-scan. Then, on January 25, 2005, Doctor Hirsh submitted a Physical Request for Services for a surgery consult for Plaintiff. On March 1, 2005, Doctor Capot submitted another Physical Request for Services in which he sought an exploratory laparotomy and endoscopy for Plaintiff.

A few days later, on March 10, 2005, Plaintiff was referred to an outside physician at Mercy Hospital in Bakersfield, California. Doctor Rodriguez, a physician at Mercy Hospital, did a surgery consultation. On April 11, 2005, Doctor Capot directed Plaintiff to be transported to the emergency room at Mercy Hospital. On April 12, 2005, Doctor Rodriguez did a surgical consultation, and the next day he performed surgery to remove Plaintiff's abdominal mass.

There is a factual dispute as to whether the January 25 and March 1, 2005 Physical Requests for Services were seen by Defendant Tate and denied by Defendant Tate. Plaintiff alleges that Defendant Tate reviewed and denied the requests. Defendant Tate alleges that he never reviewed or denied the requests, and consequently was not aware of Plaintiff's condition.

---

[1] Doctor Capot is no longer a defendant in this action.

This is the only pertinent disputed fact in this matter.

## II. LEGAL STANDARD

### A. Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The "party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (quoting Rule 56(c) of the Federal Rules of Civil Procedure).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.

The parties bear the burden of supporting their motions and oppositions with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record they wish the Court to consider. Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The Court will not undertake to mine the record for triable issues of fact. Id.

## B. Eighth Amendment - Inadequate Medical Care

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992)).

Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060); see Farmer v. Brennan, 511 U.S. 825, 837–42 (1994). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. (citing McGuckin, 974 F.2d at 1060 (internal quotations omitted)). Where the claim involves a delay in the receipt of treatment or care, the claim is not cognizable unless the delay led to further harm. McGuckin, 974 F.2d at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

## III. ANALYSIS

Plaintiff claims Defendant Tate violated Plaintiff's Eighth Amendment rights by providing inadequate medical care. Plaintiff has submitted evidence sufficient to satisfy the first element of an inadequate medical care claim by establishing, without dispute, that he had a serious medical need. He has not submitted evidence to satisfy the second requirement, i.e., that Defendant Tate was aware of his medical need and acted with deliberate indifference. Plaintiff has failed to show that there is a genuine issue of material fact on the issue of whether Defendant Tate was actually aware of and ignored Plaintiff's need for medical treatment.

It is undisputed that Defendant Tate never treated Plaintiff and, in fact, never even met him. Plaintiff's claims that Defendant Tate was the CMO at CCI and as such was required to and did review the Physical Requests for Services submitted by Plaintiff's doctors, and that he ignored or denied those requests. (Pl.'s Opp. at 6.) In support of this claim, Plaintiff cites to Defendant Tate's job description and argues that as CMO he is responsible for ensuring that all inmates receive adequate medical care. (Pl.'s Opp. at 11.) There is of course logic to Plaintiff's claim in this regard, but that is insufficient to take it beyond supposition or theory. Even the fact, if established, that Defendant Tate was supposed to review such requests as part of his job duties does not supply the crucial piece missing here, i.e., that Defendant Tate actually did review the requests. Absent same, Plaintiff's claim that Defendant Tate must have reviewed them because he was supposed to does not rise beyond the level of speculation and can not be said to be sufficient to prove that fact or create a genuine dispute over that fact. Matsushita, 475 U.S. at 586 (in a motion for summary judgment, the opponent "must do more than simply show that there is some metaphysical doubt as to the material facts") (citations omitted).

Nothing on the written Requests for Services suggest that Defendant Tate saw and acted on them. (Def.'s Mot. at Ex. 2, at 7 and 14.) There is no marking on either of them to suggest it was reviewed, approved, authorized, or denied by Defendant Tate. Defendant Tate states that "[i]n accordance with [his] routine and practice, had [he] denied [Doctor] Hirsch's request for a surgery consult for [Plaintiff], [he] would have circled the "DENIED" option and signed the form." (Tate Decl. at ¶ 25.) Similarly, he states that "[i]n accordance with [his] routine and practice, had [he] denied [Doctor] Capot's request for a GI consult and endoscopy for [Plaintiff], [he] would have circled the "DENIED" option and signed the form." (Tate Decl. at ¶ 32.) As noted, there is no such marking on the requests.

Plaintiff appears to argue that Defendant Tate did see the requests but had a system in place where he would refrain from marking the written documents so he could deny responsibility for injury resulting from the denial or service. (Pl.'s Opp at 6.) Plaintiff provides no evidence in support of such a claim. It is just a theory, and as such does not

-5-

rise to the level of competent evidence on which Plaintiff or this Court could rely to deny summary judgment.

Plaintiff admits that his only other basis for believing that Defendant Tate rejected the request for surgery is that, according to Plaintiff, Doctor Rodriguez told him that "the CMO" delayed his surgery. (Farley Dep. 100:5-101:23, April 29, 2011.) Plaintiff has not submitted any evidence that would explain this statement, much less take it outside the realm of inadmissable hearsay.

Beyond the foregoing, Plaintiff provides no evidence to support a claim that Defendant Tate actually reviewed or was even aware of the requests at issue here and chose to deny them. Plaintiff has not submitted any declarations from CCI personnel or anyone else to support his conclusions.

Defendant Tate denies that he was aware of Plaintiff's condition and he denies that he took any action to approve or deny care for Plaintiff as alleged. (Tate Decl. at ¶¶ 18, 23, 26, 30, 32, 36, 38, 39.)

Thus, the Court is left with Defendant Tate's sworn denial of knowledge of Plaintiff's condition as the only competent evidence. Plaintiff's inability to establish that there is a genuine dispute of material fact on this issue precludes reliance on it to defeat summary judgment. Absence of evidence of such a fact is fatal to the showing of deliberate indifference necessary to show an Eighth Amendment violation. See Farmer, 511 U.S. at 837 (deliberate indifference requires that a defendant "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"). Accordingly, the Court recommends that Defendant Tate's Motion for Summary Judgment against Defendant Tate be GRANTED.

## IV.   CONCLUSION

Accordingly, for the reasons set forth above, it is HEREBY RECOMMENDED that Defendant Tate's July 20, 2011 Motion for Summary Judgment (ECF No. 72) be GRANTED.

These Findings and Recommendation are submitted to the United States District

Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **thirty days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:     October 30, 2011              /s/ *Michael J. Seng*
                                         UNITED STATES MAGISTRATE JUDGE